Edward G. Baker, J.
Plaintiff, the owner and holder of 150 shares of the capital stock of the defendant, brought this action pursuant to section 977-b of the Civil Practice Act to obtain the appointment of a permanent receiver of the New York assets of the defendant, a corporation organized under the laws of the Republic of Cuba.
The statute provides that an action may be brought in the Supreme Court, by any domestic or foreign creditor, judgment creditor or attachment creditor or stockholder of a foreign corporation, for the appointment of a receiver of the assets in this State of the corporation whenever it has assets or property of any kind within the State and (a) it has heretofore been or is hereafter dissolved, liquidated or nationalized, or (b) its charter or organic law has heretofore been or hereafter is suspended, repealed, revoked or annulled, or (c) it has heretofore ceased or hereafter ceases to do business whether voluntarily or otherwise.
It is alleged in the complaint that on or about August 5, 1960, the Cuban Government nationalized the defendant and confiscated all its assets, and defendant has ceased to do business and at the present time does not do any business whatsoever, and is in the process of liquidating its assets. Judgment is demanded: (1) that a temporary receiver of the assets of defendant within the State of New York be appointed pursuant to subdivision 4 of section 977-b of the Civil Practice Act; and (2) that a permanent receiver be appointed, pursuant to the statute, to liquidate the assets within the State of New York of said defendant.
The answer admits that plaintiff is the owner and holder of 150 shares of the capital stock of defendant; denies, generally, the other material allegations of the complaint, and alleges two affirmative defenses. In the first there are alleged facts which purport to establish that defendant has not ceased to do business within the meaning of the statute. In the second it is alleged that, in the circumstances of this case, if the statute be held to authorize the appointment of a permanent receiver of its New York assets, then the statute is unconstitutional because the corporation and its stockholders would thereby be unjustly and arbitrarily deprived of their property in violation of the due process clauses of the Federal and State Constitutions (U. S. Const., 14th Arndt.; N. Y. Const., art. I, § 6).
In a decision herein (14 A D 2d 582), the Appellate Division held that the second affirmative defense was properly stricken at Special Term for insufficiency. The court wrote (pp. 583-584): 11 If, under the facts, the statute be not applicable, the *65 complaint will be dismissed; if it be applicable, the statute has already been held to be constitutional ” (citing cases). Both at the trial and in its posttrial memorandum, defendant requested that this court pass again on this defense, on all the evidence. The court has no jurisdiction to do so. It is the law of the case that this defense is insufficient in law.
The defendant -was organized in 1926 under the laws of the Republic of Cuba. It was reorganized under Cuban law in 1942 and its original corporate name, Compañía Azucarera Ceballos changed to Compañía Azucarera Vertientes-Camaguey de Cuba, its present name. Until on or about August 6,1960, its principal office and place of business was in Havana, Cuba. One of its officials, its assistant secretary and treasurer, shared with its wholly owned subsidiary, General Sugar Estates, a Cuban corporation, an office in New York City, rented or leased by said subsidiary.
Prior to August 6, 1960, the defendant was engaged, in Cuba, in the growing and harvesting of sugar cane; the operation of three mills for the production of sugar from cane; the production of molasses and alcohol; the sale of raw and refined sugar in Cuba, and through its subsidiary, General Sugar Estates, in the United States and elsewhere. Through subsidiaries, it was also engaged, in Cuba, in the operation of a warehousing business, the breeding and sale of beef cattle and the operation of an insurance business. It owned and held under lease many thousands of acres of land in Cuba.
On or about May 17, 1959, there was enacted by the Cuban Government, a statute known as the Agrarian Reform Law, which became effective upon its publication on June 3, 1959 in the Oficial Gazette of the Republic of Cuba. Between the latter date and August 6,1960, the Cuban Government, acting pursuant to the authority of said law, seized various properties of the defendant located in Cuba.
On and after August 6, 1960, the Cuban Government and its agents, acting through its National Institute of Agrarian Reform (INRA), seized all of defendant’s remaining Cuban properties including its mills, railroad lines, rolling stock and equipment, cash in banks and other assets. These seizures were effected pursuant to Cuban Law No. 851 of July 6, 1960, and Resolution No. 1 promulgated by the Cuban President and Prime Minister on August 6, 1960 pursuant to the authority vested in them by said law1. On or about August 8,1960, a delegate of INRA took possession, in behalf of that agency, of defendant’s main office in Havana and of all of defendant’s corporate books and records,
*66 After the Cuban Government commenced seizing defendant’s assets located in Cuba, the defendant retained in New York, instead of transferring to Cuba as required by Cuban law, part of the proceeds of the sales of defendant’s sugar. By August 6, 3960, the proceeds so retained aggregated approximately $2,600,000. This sum and additional sums, amounting in the aggregate to approximately $2,800,000, and comprising substantially all the known assets of the defendant available outside Cuba, are now held by the temporary receiver heretofore appointed herein by order of this court.
It is the plaintiff’s claim that defendant has ceased to do business, and has been nationalized within the meaning of section 977-b of the Civil Practice Act in that, by virtue of Cuban Law No. 851, and Resolution No. 1 promulgated pursuant thereto, the defendant has been preserved merely as a corporate entity in the ownership and complete control of the Cuban Government.2 Defendant maintains that it retains full capacity to do business and has not ceased to do business; that it has not been nationalized nor has its charter been suspended, repealed, revoked or annulled within the meaning of the statute; and that, whatever may be the purported effect of Cuban law, the provisions of section 977-b of the Civil Practice Act are here inapplicable since the defendant exists, in the United States today, and continues to function as a cle facto corporation, wholly solvent, and in the complete control of its officers and directors.
Whether the defendant corporation was nationalized within the meaning of Law No, 851, and Resolution No. 1 is a matter to be determined under Cuban law. Eminent and able Cuban attorneys called by the opposing parties differed upon the question of the meaning, intent and purpose of said law and resolution, and upon the question of their effect upon the defendant.
The difference between these witnesses centered upon a dispute as to the correct translation of the Spanish word empresa(s) which appears throughout said law and resolution. Those called in behalf of plaintiff testified that the word empresa(s) has various meanings; that, depending upon the context in which it is used, it may be translated as ‘ ‘ undertaking ” or “ enterprise ”, or as “ concern “ company ” or title ownership of a business”, or “corporate or juridical entity ”. It was the view of plaintiff’s experts that, in the context of Resolution No. 1, the word must be translated as “ corporate entity ” or “ juridical entity ”, thus indicating an intent to preserve the defendant merely as an entity in the ownership and complete control of the Cuban Government. Those witnesses who testified in defendant’s behalf held to the view that *67 the word empresa (s), properly interpreted in the context of Law No. 851 and Resolution No. 1, means “ a group of assets or properties subject to an organized industrial or commercial activity which is carried on by a natural or juridic person ”; and that, in said law and resolution the word is best translated as the English word “ enterprise”, thus indicating the intent of the Cuban Government, to seize or expropriate in behalf of the Cuban State, not the corporate or juridic entity, but only the properties, assets and enterprises of the defendant located in Cuba — i.e. its farms, mills, rolling stock, equipment, cattle, its tangible and intangible assets of every nature and description there located. In sum, defendant’s position is that, although its properties and assets in Cuba have been expropriated, it continues to exist as a corporate entity in the ownership and control of its stockholders, officers and directors; that Law No. 851 is intended to authorize in respect of this defendant, and Resolution No. 1 does, in fact, effect the expropriation only of the properties, assets and enterprises owned by the defendant which are located within the territorial boundaries of the Republic of Cuba: that said law and resolution are not intended to and do not dissolve, liquidate, nationalize, take over or affect the corporate entity or juridic personality of the defendant, or suspend, repeal, revoke or annul the contract of association3 which is defendant’s organic law.
There can be no question that all activities of the defendant in Cuba, and its right and capacity to control and continue its enterprises there, terminated following the promulgation of Resolution No. 1.
On and after the effective date of said resolution, compliance by the defendant with certain provisions of Cuban law requiring registration of corporations with Provincial Registrars of Corporations and Mercantile Registrars (official Cuban Government agencies) was no longer possible. As a result, the defendant could not thereafter obtain from these agencies the certificate of good standing necessary, under Cuban law, to enable it to pursue in the Cuban courts and administrative agencies actions or proceedings of any nature or description.
That its right to exercise any of its corporate functions or powers, or to do any business whatever in Cuba, ended with the promulgation of Resolution No. 1 is further clearly indicated by the following notation which appears in the official record relating to the organization of the defendant on file in the Central Registry of Corporations in Havana: “ Nationalized, through forced expropriation and all its assets and rights adjudicated to the Cuban State, by means of Law Number 851 of *68 July 6,1960, published in the Official Gazette of the Republic of Cuba, the seventh of the same month and year, the Cuban State being subrogated in its place and stead thereof ” (emphasis supplied).
Further evidence of the termination of defendant’s right or capacity to do business in Cuba appears in the form of Resolution No. 251 issued on August 6, 1960, by the General Manager of the Mills and Sugar Cane Factories of the National Agrarian Reform Institute (INRA). In and by said resolution one Garcia is designated as delegate “in the ‘ empresas ’ and properties, rights and actions of the company, Azucarera Vertientes-Camaguey De Cuba, as well as the subsidiary ‘ empresas ’ and properties connected or related to same, taking over its full administration in the name of the General Management of the National Agrarian Reform Institute ”.4 Pursuant to Resolution No. 251 there was drafted on August 8, 1960 in defendant’s Havana office an acta, i.e., a minute, the purpose of which was to record the seizure of that office and of its contents, including defendant’s corporate records, by said Garcia as delegate of INRA. In this acta, two representatives of the defendant present at the time stated that they ‘ ‘ reserve for the entity they represent the rights that the laws grant ”.
Plaintiff urges that the word “ empresas ” in Resolution No. 251 must be translated as corporate or juridic entity, the intent of the resolution being that the designated delegate of the General Management of INRA assume administration, control and direction not only of the expropriated properties and assets of the defendant in Cuba, but of the corporate structure or entity as well.
Obviously, any authority conferred upon the delegate of INRA, under Cuban law, must be found in Law No. 851 and Resolution No. 1; and it may not be presumed that Resolution No. 251 accomplished or was intended to accomplish any more than was authorized by the statute and the resolution promulgated pursuant thereto.
It is significant that a number of the corporations listed in paragraph “First” of Resolution No. 1 and in paragraph “First” of Resolution No. 3 (also promulgated pursuant to Law No. 851), are corporations organized and existing under the laws of the United States. Obviously, as to these, the resolutions could not have the effect of vesting in the Cuban State their ownership and complete control. The resolutions make no distinction between these corporations and those organized under Cuban law. The omission so to distinguish between them indicates that with respect to all the effect of the resolutions was *69 intended to be the same, i.e., to vest in the Cuban State title to the assets and properties “located in the National territory ” of the corporate entities therein designated, and control and direction of the enterprises in Cuba in which they theretofore had been engaged.
Support for this conclusion is to be found in Resolution No. 2 also promulgated pursuant to the authority of Law No. 851. This resolution became effective upon its publication in the Official Gazette of Cuba on September 17, 1960. It affects three banks organized and existing under the laws of the United States. In all material respects, much of the language of this resolution is identical with language contained in Resolutions Nos. 1 and 3. The word “ empresa(s) ” appears frequently in the Spanish text of Resolution No. 2. It is clear that within the context of this resolution, the word is most accurately translated into the English language as “enterprise” or “undertaking” since it would be impossible for the Cuban State to nationalize or expropriate the corporate or juridic entities of the three American banks. The plain purpose of this resolution was to effect the transfer to the Cuban State of title to the assets, properties and enterprises, in Cuba, of these banks. There is no basis in the evidence for doubt that the Spanish word “ empresa(s) ” was intended to have and has the same meaning in Resolutions Nos. 1 and 3 as in Resolution No. 2, and the effect upon the corporate entities named in each resolution would be the same.
The parties are in dispute as to the meaning and intent of article 5 of Law No. 851 which provides for and specifies the manner of payment for the properties to be expropriated in accordance with the authority conferred by article 1 of said law. The statute is silent upon the identity of the persons to whom payment is to be made. Plaintiff, consistent with, and in further support of his position that defendant continues as an entity in the ownership and complete control of the Cuban State, contends that article 5 contemplates payment, in bonds of the Cuban State, to the stockholders of defendant. Defendant maintains that this provision of the statute contemplates payment to the corporate entities to be specified in the resolutions, authority for the promulgation of which is conferred by article 1 of Law No. 851; and that there is thus implicit in the resolution recognition that the corporations designated continue to exist as entities in the ownership and under the control of their stockholders, officers and directors.
The evidence supports defendant’s view upon this issue. As hereinabove stated, Resolution No. 2 which relates to three *70 American banks, provides, in paragraph “ Fifth ” thereof, for the appointment of experts, “who will value the property-expropriated hereunder, for the purposes of payment therefor as directed by Law 851 of July 6, I960”. Identical language is employed in paragraph “ Fifth ” of Resolution No. 1.
There can be no doubt that, with respect to the three American banks, the provision of Resolution No. 2, above quoted, contemplated payment for the properties expropriated, not to their stockholders, but to the banks themselves, whose corporate or juridic entities, obviously remained unaffected by the law and resolution. There is in the evidence no basis for ascribing a different meaning or intent to the identical provision contained in Resolution No. 1.
Had it been the intent of the Cuban State to dissolve or extinguish the defendant, or to continue its existence as an entity in government ownership and control, either purpose, obviously, could and would have been clearly expressed in either statute or resolution. Thus in Cuban Law No. 891, a self-executing statute nationalizing the Cuban banks, there is express provision that the juridical person or companies affected by that law “ are declared dissolved and extinguished for all legal purposes ”. Article 5 of Law No. 891 provides, in part: “ The partners or stockholders of the juridical persons or companies, that are dissolved or extinguished hereby, are declared entitled to the right of indemnity resulting from the expropriations ordered ”. No similar provision is to be found in Law No. 851 or Resolution No. 1; and it seems clear that, had the legislative intent been as contended by plaintiff, some such provision, with appropriate modifications, would have been expressed in either or both.
Compelling evidence to support defendant’s view of the effect upon it of Law No. 851 and Resolution No. 1, is to be found in a decision of the Cuban Supreme Court rendered upon an appeal to that court by the defendant following seizure by an official of INRA of certain of defendant’s properties. In its appeal, the defendant challenged the constitutionality of the seizure under the Cuban Constitution. During the pendency of the appeal, the Cuban Government enacted Law No. 851, and Resolution No. 1 was promulgated. The majority opinion of the court declared the appeal inadmissible, not because the defendant (referred to in both majority and dissenting opinions as “ the appealing entity ”) had lost juridic personality or juridic capacity to challenge the seizures, but because, as a consequence of the nationalization ordered by Law No. 851, the defendant had lost title to the properties constituting the subject matter of its *71 claim. Implicit in both majority and dissenting opinions of the Justices of the court is recognition that the defendant corporation, “ the appealing entity ”, was in existence and had juridic capacity to challenge the seizure of its properties by INRA.
This decision of Cuba’s highest appellate court is of utmost significance since the shorter and more direct route to rejection by the court of the defendant’s appeal would have been for the court to declare, if either had been the fact: (1) that the corporation’s existence as a private entity under Cuban law had come to an end with the promulgation of Resolution No. 1, and as a consequence, there was lacking right or capacity to appeal ; or, (2) that the corporation had been dissolved under the provisions of article 221 of the Cuban Code of Commerce.
Article 221 of the Cuban Code of Commerce provides, in relevant part, as follows:
“ Companies of any kind whatsoever shall be completely dissolved for the following reasons:
“ 1) — the conclusion of the enterprise which constitutes its purpose.
“ 2) The entire loss of the capital.”
It is plaintiff’s contention that, although, under defendant’s by-laws, its purpose was to engage in all business, inside or outside of Cuba, the termination of its right to do business in Cuba was tantamount to “ conclusion of the enterprise which constitutes its purpose ”. I cannot agree. Defendant’s by-laws provide, among other things, that, “ The company is established for the purpose of freely carrying on in Cuba and abroad industrial and commercial business, without any limitations other than those established by law ’ ’. The evidence supports the view that the termination of its right to pursue its enterprises in Cuba, would not, under Cuban law, deprive the defendant of the right to do business elsewhere.
Nor has defendant, under Cuban law, suffered the entire loss of its capital. While it is true that, under Cuban law, the funds now in the hands of the receiver are held here illegally and may not be considered part of its capital, defendant’s claim filed with the United States Department of State in excess of $93 million and its right to receive bonds of the Republic of Cuba, pursuant to the provisions of Law No. 851 (for whatever they may be worth), are part of its capital.
It is concluded that the defendant corporation has not been dissolved, liquidated or nationalized, and that its charter, or organic law, has not been suspended, repealed, revoked _ or annulled, within the meaning of section 977-b of the Civil Practice Act.
*72 It remains to be determined whether the defendant has ceased to do business within the meaning of the statute.
It must be borne in mind that, within 10 days after the promulgation of Eesolution No. 1, the temporary receiver was appointed herein. This, obviously, made impossible the utilization of the corporate funds which otherwise would have been available for the conduct of business. The cessation of business caused by the intervention of the receiver cannot avail the plaintiff.
Defendant has continued to maintain its New York office. In the period between June 23, 1960 and October 31, 1961, 12 meetings of its board of directors have been held at each "of which there have been present at least four directors, a quorum under its by-laws. All seven of its directors (a full complement) reside in the United States.
The board has the power in the event of a vacancy occurring among the directors to elect a successor to hold office until the next election of directors is held by the general meeting of stockholders. Under its by-laws, the board of directors is authorized to hold meetings in Havana, Cuba, New York City, or elsewhere in the United States or abroad at the discretion of the board. The chairman of the board, the president, the secretary, the assistant secretary and treasurer all reside in the United States. Defendant’s capacity to continue to operate as an entity in accordance with the requirements of its charter and by-laws remains unimpaired.
It has so continued. Among its activities which, in the judgment of this court, constitute ‘1 doing business ’ ’ within the meaning of section 977-b, have been the following:
1. It entered into new employment contracts with key officers and employees, the purpose of which was to assure the continued availability to the corporation of said officers and employees to conduct the corporate affairs.
2. It conserved dollar assets by taking effectual steps to retain in New York, and to prevent the transfer to Cuba, of payments due to it and claimed to be due to it by virtue of the sale of its sugar.
3. It continued to maintain an office in New York to carry on the corporation’s affairs to the extent possible in view of the temporary receivership.
4. The board of directors met regularly to manage and control the affairs of the corporation to the extent possible in view of the temporary receivership.
*73 5. It took steps to pay the creditors of the corporation, inclusive of the stockholders, in respect to a dividend declared in October, 1959.
6. It sought out, investigated and evaluated new business opportunities for the investment of its available capital when freed of the receivership.
7. Although by reason of lack of funds no stockholders’ meetings were called, it kept its stockholders informed about the defendant’s affairs.
8. It continued to maintain its membership in various trade and business organizations.
9. It caused to be prepared and filed with the United States Department of State the corporation’s claim in excess of $93 million dollars against the Cuban Government.
Accordingly, judgment is directed dismissing plaintiff’s complaint and vacating the temporary receivership. The temporary receiver will be directed to account and to restore to defendant the funds now in his possession.
1. OFFICIAL GAZETTE Of the Republic of Cuba
First Section Havana, Thursday, July 7, 1960.
YEAR LVTII — Fortnight Volume No. XIII No. 130 Page 16367
MINISTRY OF THE TREASURY
I, dr. osvaldo DORTicos toebado, President of the Republic of Cuba, do hereby make known that the Council of Ministers has enacted and I have approved the following legislation:
whereas, the attitude assumed by the government and the Legislative Power of the United States of North America, which constitutes an aggression, for political purposes, against the basic interests of the Cuban economy, as recently evidenced by the Amendment to the Sugar Act just enacted by the United States Congress at the request of the Chief Executive of that country, whereby exceptional powers are conferred upon .the President of the United States to reduce the participation of Cuban sugars in the American sugar market as a threat of political action against Cuba, forces the Revolutionary Government to adopt, without hesitation, all and whatever measures it may deem appropriate or desirable for the due defense of the national sovereignty and protection of our economic development process.
whereas, Article 24 of the Fundamental Law of the Republic authorizes the forced expropriation of property, leaving it to the ordinary laws to confer authority and competent jurisdiction to decree the expropriations and to regulate the procedure for the accomplishment thereof and the means and terms for the payment of the expropriated property.
whereas, it is advisable, with a view to the ends referred to in the first Whereas of this Law, to confer upon the President and the Prime Minister of the Republic full authority to carry out the nationalization of the “ Empresas ” and property owned by physical and corporate persons who are nationals of the United States of North America, or of “Empresas ” which have majority *74 interest or participations in such “Empresas”, even though they be organized under the Cuban laws, so that the required measures may be adopted in future cases with a view to the ends pursued.
now, therefore; In pursuance of the powers vested in it, the Council of Ministers has resolved to enact and promulgate the following

LAW No. 851

article 1. Full authority is hereby conferred upon the President and the Prime Minister of the Republic in order that, acting jointly through appropriate resolutions whenever they shall deem it advisable or desirable for the protection of the national interest, they may proceed to nationalize, through forced expropriations, the properties or “Empresas” owned by physical and corporate persons who are nationals of the United States of North America, or of the “Empresas” in which such physical and corporate persons have an interest, even though they be organized under the Cuban laws.
article 2. In the resolutions providing for the expropriation the President and the Prime Minister of the Republic shall declare the necessity, public utility and national interest justifying such action.
article 3. The President and the Prime Minister of the Republic shall also designate in the resolutions above referred to in Article 1 of this Law, the persons or agencies that shall have charge of the administration of the properties or “ empresas ” expropriated hereunder.
article 4. Once the expropriation of a property has been consummated and the administration thereof taken over by the person or agency designated therefor, the President and the Prime Minister of the Republic shall appoint appraisers of their election to determine the value of the expropriated property for the purposes of the payment thereof, which shall be effected as provided in the following article.
article 5. The payment for the expropriated property shall be made, after the due appraisal thereof, in accordance with the following rules, to wit:
a) The payment shall be made in Bonds of the Republic, which will'be issued for that purpose by the Cuban State and shall be subject to the terms and conditions set forth in this Law.
b) For the amortization of said bonds, and by way of security therefor the Cuban State shall set up a sinking fund which shall be fed annually with twenty-five per cent (25%) of the foreign exchange corresponding to the excess of the purchases of sugar made in each calendar year by the United States of North America over and above Three Million (3.000,000) Spanish Long Tons, for their domestic consumption, at a price of not less than 5.75 cents of a dollar per English pound (F. A. S.). To this end, the National Bank of Cuba shall open a special dollar account which shall be captioned “ Fund for the Payment of Expropriations of Properties and “Empresas” of Nationals of the United States of North America.”
c) The bonds shall draw at least two per cent (2%) annual interest, which shall be paid only and exclusively out of the fund to be set up and fed pursuant to Rule b).
d) Such annual interest as cannot be paid out of said Fund referred to above in Rule b) shall not be cumulative, but the obligation to pay it shall be deemed extinguished.
e) The Bonds shall be amortized in a period of not less than thirty (30) years counted from the date on which the expropriation of the property or “ empresa ” involved is actually consummated, and the President of the National Bank of Cuba is hereby authorized to determine how and to which extent they will be amortized.
*75 article 6. The resolutions jointly issued by the President and the Prime Minister of the Republic in the forced expropriation proceedings instituted hereunder may not be appealed, as no remedial action shall be available there against.
article 7. The Minister of the Treasury is hereby directed to issue, in the name and behalf of the Cuban State, the bonds with which the property expropriated hereunder will be paid for.
article 8. This Law supersedes all and whatever legal and statutory provisions may be repugnant hereto, or may conflict with the enforcement hereof, and shall become operative from the date of its publication in the Official Gazette of the Republic.
now therefore: I hereby order that this law be fully and strictly observed and enforced.
Done at the Presidential Palace, in Havana, this 6th day of July, 1960.
OSVALDO DORTICOS TORRADO
President
Fidel Castro Ruz, Prime Minister
Rolando Dias Aztarain, Minister of the Treasury.
EXECUTIVE POWER
RESOLUTION No. 1
whereas, law No. 851, of July 6, 1960, published in the Official Gazette of July 7, 1960, authorized the undersigned to provide, through joint resolutions, whenever they deem it advisable in order to defend the national interests, for the nationalization through compulsory expropriation, of the property or empresas owned by physical and corporate persons who are nationals of the United States of North America, and the empresas in which such persons have any interest or participation, even though they have been organized under the Cuban laws.
whereas, the attitude assumed by the Government and the Legislative Power of the United States of North America, of continued aggression, for political purposes, against the basic interests of the Cuban economy, as evidenced by the amendment to the Sugar Act adopted by the Congress of said country, whereby exceptional powers were conferred upon the President of said nation to reduce the participation of Cuban sugars in the sugar market of said country, as a weapon of political action against Cuba, was considered as the fundamental justification of said law.
whereas, the Chief Executive of the Government of the United States of North America, making use of said exceptional powers, and assuming an obvious attitude of economic and political aggression against our country, has reduced the participation of Cuban sugars in the North American market with the unquestionable design to attack Cuba and its revolutionary process.
whereas, this action constitutes a reiteration of the continued conduct of the government of the United States of North America, intended to prevent the exercise of its sovereignty and its integral development by our people thereby serving the base interests of the North American trusts, which have hindered the growth of our economy and the consolidation of our political freedom.
whereas, in the face of such developments the undersigned, being fully conscious of their great historical responsibility, and in legitimate defense of the national economy, are duty bound to adopt the measures deemed necessary to counteract the harm done by the aggression inflicted upon our nation.
*76 whereas, according to our constitutional and legal regime, in the exercise of our sovereignty and as a measure of internal legislation, believing that it is advisable, in the face of the consummation of the aggressive measures referred to in the foregoing clauses, to exercise the powers vested in the undersigned by Law No. 851, of July 6, 1960, i.e., to proceed to the compulsory expropriation in favor of the Cuban State of property and empresas owned by juridical persons that are nationals of the United States of North America, as a decision justified by the necessity of our nation to be indemnified for the harm done to its economy and to affirm the consolidation of the economic independence of the country.
whereas, the “ Compañía Cubana de Electricidad ” and the “ Cuban Telephone Company ” represent typical examples of the profiteering and despoiling monopolies which have exploited and taken undue advantage, for many years, of the economy of the nation and the interests of the people.
whereas, the sugar manufacturing companies took possession of the best lands of our country under the protection of the Platt Amendment, an ominous clause designed to permit control of the national economy which facilitated the invasion of the country by the imperialistic capital of its insatiable and unscrupulous foreign masters who have recovered many times the value of their investments.
whereas, the petroleum companies have eontinuedly robbed the economy of the nation by charging monopoly prices which resulted, for many years, in heavy disbursements of foreign exchange and, in their eagerness to perpetuate their privileges, ignored the laws of the nation and hatched a criminal scheme to boycott our country, thereby forcing the Revolutionary Government to provide for their intervention.
whereas, it is the duty of the peoples of Latin America to strive for the recovery of their native wealth by wresting it from the hands of the foreign monopolies and interests which prevent their development, promote political interference, and impair the sovereignty of the underdeveloped countries of America.
whereas, the Cuban Revolution will not stop until it shall have totally and definitely liberated its fatherland.
whereas, Cuba must be a luminous and stimulating example for the sister nations of America and all the underdeveloped countries of the world to follow in their struggle to free themselves from the brutal claws of Imperialism.
how, therefore : In pursuance of the powers vested in us, in accordance with the provisions of Law No. 851, of July 6, 1960, we hereby,
RESOLVE:
first. To order the nationalization through compulsory expropriation, and, therefore, the adjudication in fee simple to the Cuban State, of all the property and empresas located in the national territory, and the rights and interests resulting from the exploitation of such property and empresas owned by the juridical persons who are nationals of the United States of North America, or operators of empresas in which nationals of said country have a predominating interest, as listed below, to wit:
e » »
22.— Compañía Azucarera Vertientes-Camaguey de Cuba.
9*9
secohd. Consequently, the Cuban State is hereby subrogated in the place and stead of the juridical persons listed in the preceding section, in respect oi the property, rights and interests aforesaid, and of the assets and liabilities constituting the capital of said empresas.
*77 third. It is hereby declared that these compulsory expropriations are carried out for the reasons of public necessity and national interest referred to in the introductory clauses of this Resolution.
fourth. In accordance with the provision contained in Article 3 of Law No. 851, of July 6, 1960, the National Institute of Agrarian Reform is hereby designated as the organization that will be in charge, through the Department of Industrialization of its “ General Administration of Sugar Mills,” and through the Cuban Petroleum Institute, and with all the powers inherent in the functions hereby entrusted to them, of the administration of the property and empresas constituting the subject of the expropriations provided for in this Resolution.
fifth. The organizations mentioned in the preceding section shall designate the officials elected by them, who, acting in their names, will take over the management of said property and empresas without any limitation whatsoever; and once such managements shall have been assumed, they shall report such action to the undersigned in order to appoint the experts who will value the property expropriated hereunder, for the purposes of the payment therefor as directed by Law No. 851, of July 6, 1960.
sixth. The managers so designated are hereby further authorized to proceed to the immediate preventive intervention of the juridical persons, empresas and property which are subsidiary and appurtenant or associated to those constituting the subject of this Resolution; and once such interventions shall have been effected, such steps shall be reported to the undersigned for proper action.
seventh. Due authority is hereby conferred upon the organizations designated above, to proceed to the proper notifications of this Resolution to the legal representatives of the juridical persons thereby affected, and to carry out what has been resolved.
eighth. Due authority is hereby likewise conferred upon said organizations to issue, as a consequence of the adjudications in favor of the Cuban State of the empresas, property, rights and interests to which this Resolution refers, the proper orders to the respective Real Property Registrars, Provincial Registrars of Corporations, and Mercantile Registrars, to enter the consequent registrations in behalf of the Cuban State. done in Havana, this 6th day of August, 1960.
Fidel Castro Ruz Primer Ministro.
Osvaldo Dortieos Torrado Presidente.
note: The foregoing translations from the Spanish language to the English language of the full text of Law No. 851 and Resolution No. 1 were submitted by plaintiff. The Spanish word empresa(s), as to the precise meaning of which, in the context of said law and resolution, the parties are in dispute has not been translated.
2. Defendant has been nationalized within the meaning of section 977-b of the Civil Practice Act if, by Cuban Law No. 851 and Resolution No. 1: (a) The Cuban Government has absorbed the corporation unto itself in such manner or to such an extent as to put the corporation completely out of existence or (b) the Cuban Government by said law and resolution has preserved the corporation merely as a corporate entity in the ownership and complete control of said government. (See 14 A D 2d 582.)
3. Under Cuban law defendant’s charter or organic law is not a concession or privilege granted by the Cuban Government but is a contract of association among the incorporators.
*78 4, Defendant's translation of this clause reads: “in the enterprises and properties, rights and actions of the company ‘Azucarera Vertientes-Camaguey De Cuba ’, and of the enterprises and properties subsidiary, and connected or related to same, taking over their full administration in the name of the General Management of the National Agrarian Reform Institute” (emphasis supplied).